**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

THE TRAVELERS INDEMNITY COMPANY, as
subrogee of the City of Binghamton, New York, the
Village of Johnson City, New York and of the Binghamton          3:22-cv-1136 (BKS/ML)
Johnson City Joint Sewage Board,

                                        Plaintiff,

v.

GHD CONSULTING SERVICES INC., JACOBS
PROJECT MANAGEMENT CO., J.L. RICHARDS &
ASSOCIATES LIMITED,

                                        Defendants.

---

GHD CONSULTING SERVICES INC.,

                                        Third-Party Plaintiff,

v.

PC CONSTRUCTION COMPANY, d/b/a PCEO and I.
KRUGER, INC.,

                                        Third-Party Defendants.

---

**Appearances:**

*For Plaintiff:*
Kevin P. Smith
Law Offices of Robert Stutman, P.C.
200 Vessey St., 24th Street, Suite #24038
New York, NY 10281

*For Defendant/Third-Party Plaintiff GHD Consulting Services Inc.:*
Brian Sutter
Sugarman Law Firm, LLP
1600 Rand Building
14 Lafayette Square
Buffalo, NY 14203

*For Defendant Jacobs Project Management Co.:*

James Walsh
Christopher M. Petrossian
London Fischer LLP
59 Maiden Lane
New York, NY 10038

*For Defendant J.L. Richards & Associates Limited:*
Michael Damia
Harter Secrest & Emery LLP
1600 Bausch & Lomb Place
Rochester, NY 14604

*For Third-Party Defendant PC Construction Company, d/b/a PCEO:*
Elizabeth Knauer
Margaret Holden
Sive, Paget & Riesel P.C.
560 Lexington Avenue, 15th Floor
New York, NY 10022

*For Third-Party Defendant I. Kruger, Inc.:*
Robert A. Gallagher
Anthony V. Finizio
Alexander P. Downs
Matthew G. Simons
Troutman Pepper Hamilton Sanders, LLP
501 Grant Street, Suite 300
Pittsburgh, PA 15219

Samuel J. Abate, Jr.
Troutman Pepper Hamilton Sanders, LLP
875 Third Avenue
New York, NY 10022

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff The Travelers Indemnity Company, as subrogee of the City of Binghamton, New

York (the "City"), the Village of Johnson City, New York (the "Village"), and the Binghamton

Johnson City Joint Sewage Board (the "Board"), filed this diversity action against Defendants

GHD Consulting Services Inc. ("GHD"), Jacobs Project Management Co. ("Jacobs"), and J.L.

Richards & Associates Limited ("J.L. Richards"), alleging negligence and contract claims arising out of an incident on February 18, 2022, at a wastewater treatment facility undergoing rehabilitation in Vestal, New York. (Dkt. No. 122). GHD filed a Third-Party Complaint (the "TPC") against Third-Party Defendants I. Kruger, Inc. ("Kruger") and PC Construction Co., d/b/a PCEO ("PC Construction") alleging claims for contractual indemnification, common-law indemnification, and contribution. (Dkt. No. 124). Jacobs filed a cross-claim against Third-Party Defendants for contribution and J.L. Richards filed a cross-claim against Third-Party Defendants for contribution or indemnification. (Dkt. Nos. 125, 127). Presently before the Court are Third-Party Defendants' motions to dismiss the Third-Party Complaint and the cross-claims asserted against them. (Dkt. Nos. 133, 134). The motions are fully briefed.[1] (Dkt. Nos. 133-1, 134-1, 141, 142, 143, 144, 145, 146, 147). For the following reasons, the Court grants in part and denies in part the Third-Party Defendants' motions to dismiss.

## II.    FACTS[2]

The City and the Village jointly own a wastewater treatment facility located at 4480 Vestal Road, in Vestal, New York, and created the Board to operate the facility. (Dkt. No. 122, ¶¶ 12–13). The City, the Village, and the Board "resolved to restore, rehabilitate and modernize" the facility (the "project"). (*Id.* ¶ 15). Plaintiff "provided property and casualty insurance to [t]he City, [t]he Village, and [t]he Board covering loss or damage to the real property, fixtures,

---

[1] Plaintiff also filed responses to both motions to dismiss. (Dkt. Nos. 137, 138).

[2] The facts are drawn from the TPC, (Dkt. No. 124), as well as Plaintiff's second amended complaint (the "SAC"), (Dkt. No. 122). *See Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, 156 F. Supp. 3d 348, 361 (E.D.N.Y. 2016) (explaining that third-party claims "may be read in conjunction with the original pleadings" (quoting *Arkwright Mut. Ins. Co. v. Bojoirve, Inc.*, No. 93-cv-3068, 1996 WL 361535, at *2, 1996 U.S. Dist. LEXIS 9013, at *6 (S.D.N.Y. June 27, 1996))). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

personal property and equipment located at the wastewater facility, and other incidental coverages." (*Id.* ¶ 23).

To undertake the project, the City contracted with GHD for "professional engineering services," and later contracted with Jacobs for "construction management services." (*Id.* ¶¶ 16, 21). GHD also entered into a "Subconsultant Agreement" with J.L. Richards for "engineering services." (*Id.* ¶ 17). Kruger "developed Pre-Selection Documents for Goods and Special Services for Biological Aerated Filter Equipment" and submitted this report "to be utilized by the contractor awarded the contract to construct the project." (Dkt. No. 124, ¶¶ 20, 22). PC Construction submitted a bid for the project, in which it "agreed to include in its bid the Goods and Special Services as developed by [Kruger]," and received the contract. (*Id.* ¶¶ 39–40).

Part of the project involved "the construction and rehabilitation of certain secondary wastewater treatment systems known as CN units." (Dkt. No. 122, ¶ 22). The CN units "consisted of large concrete tanks through which wastewater, having already undergone primary treatment, would flow for purposes of accomplishing secondary treatment, and specifically the removal of bacteria." (*Id.* ¶ 24). Both the rehabilitated and new CN units contained "a site glass," "consist[ing] of a metal tube, approximately 16 inches in diameter, having a fixed, transparent watertight lens at the end of the tube," "installed in the wall of the concrete CN unit, so as to allow operators to visually see into the unit during operation." (*Id.* ¶ 25).

The site glasses were installed differently in the new and rehabilitated CN units: in the new CN units, the site glasses "were installed during the pouring of the concrete from which the new CN units were constructed," while "[i]n the case of the existing, rehabilitated CN units, holes were bored through the existing concrete walls for purposes of inserting and installing the site glasses." (*Id.* ¶¶ 26, 28). In the latter units, the sight glasses "were secured in place solely

4

with a product known as a Garlock Link-Seal, which is a rubber seal device." (*Id.* ¶ 29). Kruger had selected and approved the Garlock Link-Seals to be used for the purpose of "secur[ing] the sight glasses into the walls of the existing CN units." (Dkt. No. 124, ¶ 32). Additionally, employees of GHD, Jacobs, and J.L. Richards, including licensed engineers, knew of and approved the use of the Garlock Link-Seals for the same purpose. (Dkt. No. 122, ¶ 30). PC Construction "was responsible for installing the Garlock Link-Seals into the walls of the existing CN units that were being rehabilitated." (Dkt. No. 124, ¶ 41).

On or about February 18, 2022, an incident occurred at the facility wherein a site glass ejected from the wall of one of the rehabilitated CN units, releasing the contents contained within it. (Dkt. No. 122, ¶ 31). Consequently,

> [T]he building housing the CN units and other buildings at the wastewater facility, as well as mechanical equipment, electrical equipment, and other property contained in those buildings, was flooded and damaged and biologically contaminated filter media from inside the CN unit was deposited through various parts of the wastewater facility, necessitating an extensive cleanup operation as well as repair to, and replacement of real property, fixtures, equipment, and other personal property.

(*Id.* ¶ 32).

The incident left the CN units "unusable for an extensive period of time," which led the City, the Village, and the Board to "incur[] the expense of alternative secondary wastewater treatment." (*Id.* ¶ 33). Pursuant to the insurance policy, Plaintiff "made certain payments to its insureds for damage to real property, fixtures, personal property, equipment and other losses resulting from the flood, including the expense of cleanup after the flood and may possibly pay further amounts under the policy yet to be determined." (*Id.* ¶ 35). Plaintiff is seeking to recover the amounts paid to its insureds as a result of this loss. (Dkt. No. 122)

III.    **STANDARD OF REVIEW**

"A motion to dismiss counterclaims and third-party claims is evaluated under the same standard as a motion to dismiss a complaint." *ExpertConnect, LLC v. Fowler*, No. 18-cv-4828, 2020 WL 3961004, at *2, 2020 U.S. Dist. LEXIS 122494, at *6 (S.D.N.Y. July 13, 2020). To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" are insufficient; rather, a plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). The Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). Additionally, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

IV.    **DISCUSSION**

A.    **Kruger's Motion to Dismiss**

1.    **Dismissal of GHD's TPC**

Pursuant to Rule 12(b)(6), Kruger seeks to dismiss GHD's claims for contractual indemnification, common-law indemnification, and contribution. (*See* Dkt. Nos. 133, 133-1).

a.    **Contractual Indemnification**

Kruger argues that GHD cannot state a claim for contractual indemnity because: (1) no contract exists between Kruger and GHD; and (2) the two contracts referenced in the TPC between Kruger and PC Construction are unrelated to the Garlock Link-Seals. (Dkt. No. 133-1,

at 11–12). GHD does not dispute these facts, but argues that because "discovery in this case is not yet complete, and the various contracts in place have not yet been examined during depositions," "should this Court be inclined to dismiss GHD's claim for contractual indemnification against Kruger, it is respectfully submitted that such claim should be dismissed without prejudice." (Dkt. No. 141, at 7).[3]

"Under New York law, the right to indemnification operates to shift liability from one party to another and arises from either an express or implied contract." *Graham-Johnson v. City of Albany*, No. 19-cv-1274, 2021 WL 1614763, at *2, 2021 WL 1614763, at *5 (N.D.N.Y. Apr. 26, 2021) (citing *McDermott v. New York*, 50 N.Y.2d 211, 216 (1980)). Here, Kruger is correct that GHD's claim for contractual indemnification does not allege the existence of a contract between GHD and Kruger, rather, it alleges two contracts between Kruger and PC Construction. (*See* Dkt. No. 124, ¶¶ 25–27). Accordingly, as there is no contract upon which to base a claim for contractual indemnification, the Court must dismiss GHD's first cause of action.

### b.    Common-Law Indemnification

Kruger seeks dismissal of GHD's claim for common-law indemnification for two reasons: first, that "GHD has not pled that it delegated exclusive responsibility to Kruger such that GHD is free from wrongdoing," (Dkt. No. 133-1, at 12–14); and second, that "GHD failed to plead a special relationship with Kruger," (*id.* at 14–16). GHD in response states that "Kruger misstates the law and ignores the specific allegations raised by GHD in" the TPC and argues that the claim is sufficiently pled. (Dkt. No. 141, at 7–10).

---

[3] To the extent discovery reveals a basis for a contractual indemnification claim, GHD may seek permission to amend the TPC. *See, e.g.*, *Sjunde AP-Fonden v. Gen. Elec. Co.*, 341 F.R.D. 542, 551 (S.D.N.Y. 2022) (allowing the plaintiffs to replead claim that had been twice before dismissed because of "information revealed in discovery").

"The principle of common-law, or implied indemnification, permits one who has been compelled to pay for the wrong of another to recover from the wrongdoer the damages it paid to the injured party." *17 Vista Fee Assocs. v. Teachers Ins. & Annuity Ass'n of Am.*, 259 A.D.2d 75, 80 (1st Dep't 1999) (citing *D'Ambrosio v. City of N.Y.*, 55 N.Y.2d 454, 460 (1982)). Implied (common law) indemnification "is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of another." *McCarthy v. Turner Constr., Inc.*, 17 N.Y.3d 369, 375 (2011) (quoting *Mas. v. Two Bridges Assocs.*, 75 N.Y.2d 680, 690 (1990)). "[T]he predicate of common law indemnity is vicarious liability without actual fault on the part of the proposed indemnitee," and for that reason, "common-law indemnity is barred altogether where the party seeking indemnification was itself at fault, and both tortfeasors violated the same duty to the plaintiff." *Firestone v. Berrios*, 42 F.Supp. 3d 403, 421 (E.D.NY. 2013) (quoting *Managhan v. SZS 33 Assocs., L.P.*, 73 F.3d 1276, 1284 (2d Cir. 1996)); *see also Perkins Eastman Architects, P.C. v. Thor Eng'rs, P.A.*, 769 F. Supp. 2d 322, 329 (S.D.N.Y. 2011) Thus "[t]he party seeking indemnification 'must have delegated exclusive responsibility for the duties giving rise to the loss to the party from whom indemnification is sought,' and must not have committed actual wrongdoing itself." *Bd. of Managers of Olive Park Condominium v. Maspeth Props.*, *LLC*, 170 A.D.3d 645, 647 (2d Dep't 2019) (quoting *Tiffany at Westbury Condominium v. Marelli Dev. Corp.*, 40 A.D.3d 1073, 1077 (2d Dep't 2007)); *17 Vista Fee Assocs.*, 259 A.D. 2d at 80.

GHD argues that its allegations (including that it "has denied liability for the incident alleged in the plaintiff's complaint," (Dkt. No. 124, ¶ 19), and that it "relied upon [Kruger's] expertise in its selection, approval, and design of the Garlock Link-Seals," (*id.* ¶ 33)), are sufficient to allege that it was free from wrongdoing, (*see* Dkt. No. 141, at 7–10). However, the

Court agrees with Kruger that GHD has failed to allege the requisite delegation of duties or that a special relationship such that Kruger owes a duty to indemnify GHD. While GHD alleges that Kruger "owed a duty to [the City, the Village, the Board] and GHD to exercise ordinary care in undertaking design services and in the preparation of the Pre-Selection Documents for Goods and Special Services for Biological Aerated Filter Equipment for" the wastewater facility, and that Kruger "assumed a duty to [the City, the Village, the Board] and GHD by undertaking certain design responsibilities with respect to the BIOSTYR system," GHD does not allege that it ever *delegated* such duties to Kruger. (*See* Dkt. No. 124, ¶¶ 30, 32). Nor do these allegations suggest that Kruger owed GHD a duty *separate* from the duty owed to the injured parties in general. *See Raquet*, 90 N.Y.2d at 183. GHD argues that the facts alleged are similar to those found to be sufficient to survive a motion to dismiss in *Graham-Johnson*. (Dkt. No. 141, at 8–10). But in *Graham-Johnson*, the third-party plaintiffs, the "city defendants," alleged that they delegated "the duty to assess and evaluate" certain buildings to the third-party defendant, a structural engineer, and that an emergency demolition, caused by the engineer's failure to advise the city employees of the structural interdependence of the buildings, was not the result of any negligence or wrongdoing of the city defendants. 2021 WL 1614763, at *3, 2021 U.S. Dist. LEXIS 79269, at *8–11. In contrast, here, GHD contracted with the City to "provide professional engineering services throughout the design phase, the construction phase, and the post-construction phase for the project," (Dkt. No. 122, ¶ 16; Dkt. No. 123, ¶ 17), a GHD professional engineer "signed and sealed a design drawing depicting the use of the Garlock Link-Seals to secure the site glasses in place in the walls of the existing rehabilitated CN units," (Dkt. No. 122, ¶ 41; Dkt. No. 123, ¶ 17), and GHD has not pled any facts from which it could be plausibly inferred that GHD delegated exclusive responsibility for the Garlock-Link-Seals to Kruger, (*see*

*generally* Dkt. No. 124). Accordingly, the Court will dismiss GHD's claim for common-law indemnification.

**c.      Contribution**

Kruger contends that "GHD's liability to Plaintiff arises out of contract, as opposed to tort," on the basis that Plaintiff's tort claim against GHD is duplicative of its contract claims, and thus that "GHD has no cognizable claim for contribution against Kruger." (Dkt. No. 133-1, at 16–18). GHD takes the position that a separate tort claim has been alleged against it and therefore that it may pursue a contribution claim against Kruger. (Dkt. No. 141, at 10–11).

"[T]he New York contribution statute 'may not be invoked to apportion liability arising solely from breach of contract.' Rather, it is well settled that 'the existence of some sort of tort liability is a prerequisite to application of the statute.'" *Perkins*, 769 F. Supp. 2d at 326 (citations omitted). Accordingly, a court will dismiss a contribution claim if the underlying claim is not based in tort. *See, e.g.*, *Livingston v. Klein*, 256 A.D.2d 1214, 1214 (4th Dep't 1998) (explaining that "the court should have granted the motion of third-party defendants to dismiss the third-party complaint seeking contribution" where "the underlying action is based on breach of contract"); *Shaoxing Daqin Imp. & Exp. Co., Ltd. v. Notations, Inc.*, No. 19-cv-2732, 2019 6498397, at *11–12, 2019 U.S. Dist. LEXIS 208593, at *35–36 (S.D.N.Y. Dec. 3, 2019) (dismissing contribution claim where underlying liability could only arise from breach of contract).

Here, Plaintiff has asserted three claims against GHD, two labeled as contract claims and one labeled as a negligence claim. (Dkt. No. 122, at 8–13). However,

> "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." Put another way, where the damages alleged "were clearly within the contemplation of the written agreement . . . [m]erely charging a breach of a 'duty of due

10

care,' employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim."

*Dormitory Auth. v. Samson Constr. Co.*, 30 N.Y.3d 704, 711 (2018) (quoting *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 389–90 (1987)). The New York Court of Appeals further noted that "we have made clear that 'where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory.'" *Id.* (quoting *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540 at 552 (1992)). The Court must therefore evaluate whether Plaintiff's negligence claim is duplicative of its contract claims.

Here, Plaintiff's tort claim alleges various ways GHD "was negligent[] and failed to exercise ordinary care with regard to the use of the Garlock Link-Seals to secure site glasses in the walls of the CN units," which led to the flooding event and resulting damages (Dkt. No. 122, ¶¶ 44–45). This claim is clearly encompassed within Plaintiff's contract claims, which are based on provisions that themselves incorporate the negligence standard. (*See id.* ¶¶ 48 (explaining that under "Section II D of the contract, GHD agreed that GHD would remain liable in accordance with applicable law for all proven or substantiated damages to [t]he City to the extent caused by GHD's *negligent* performance of any services furnished under the agreement, except for errors, omissions, or deficiencies to the extent attributable to [t]he City, [t]he City furnished data, or any third party employed by [t]he City to provide services to the GHD" (emphasis added)); 49 (explaining that under section XI of the contract "GHD agreed to indemnify [t]he City for all losses, damages, costs, expenses and liabilities arising directly or indirectly out of the *negligent* errors or omissions of services by GHD, including its employees, agents and/or contractors in the performance of the contract" (emphasis added)); 57 (same as ¶ 48)). Thus, Plaintiff's contract is alleged to obligate GHD to pay for its alleged negligence in allowing the Garlock-Link seals to

be used in the project, (*see* Dkt. No. 124, ¶¶ 51–52, 59–60)–the alleged wrongdoing underlying

Plaintiff's negligence claim, (*see id.* ¶¶ 43–44).

Additionally, Plaintiff alleges the same damages for all three claims. In its negligence

claim, Plaintiff states the following:

> As a direct and proximate cause of the negligence and lack of
> ordinary care of defendant GHD, the flooding event of February 18,
> 2022 at the wastewater facility was caused to occur, and Plaintiff's
> insured were caused to suffer losses and damages including damage
> to the CN units, damage to the building encompassing the CN units,
> damage to other buildings, damage to mechanical and electrical
> equipment, damage to other property, emergency response and
> cleanup costs, other incidental expenses associated with responding
> to and recovering from the flood event and possibly yet to be
> determined fines and penalties.

(*Id.* ¶ 45). Plaintiff's contract claims refer to the same damages as having occurred. (*See id.* ¶¶ 53

("The flooding event of February 18, 2022 and the losses and damages suffered by [t]he City,

[t]he Village and [t]he Board described in the *preceding paragraphs* were caused by GHD's

negligent performance of services furnished, negligent errors, and omissions of services under

the agreement." (emphasis added)), 61 (same)). And Plaintiff's description of the damages it

seeks to recover under the contract is broad enough to encompass the damages it seeks to recover

under its negligence claim. (*See id.* ¶¶ 54 ("GHD is contractually obligated to indemnify [t]he

City for the losses, damages and liabilities resulting from the flooding event of February 18,

2022, demand for which is hereby made."), 62 ("As the result of such professional negligence,

and as per the terms of the contract, Defendant GHD is liable to [t]he [C]ity, for all proven or

substantiated damages resulting from the incident of February 18, 2022.")).[4] Plaintiff has not alleged any injury that is not encompassed within its breach of contract claim.[5]

GHD asks the Court to consider other factors, including that Plaintiff "alleges that its damages resulted from an abrupt and cataclysmic accident of the type that was a hazard to public safety," that "[P]laintiff has alleged damages beyond the CN units themselves, including flooding and damage to other buildings within the facility," and that "this case undoubtedly involves professionals (i.e. engineers, construction managers, etc.), and the plaintiff has alleged that these professionals failed to exercise reasonable care, irrespective of their contractual duties." (Dkt. No. 141, at 11; *see also* Dkt. No. 137, at 8–13 (making similar arguments)).

But while such factors may be considered, the Court of Appeals has "made clear that 'where plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory.'" *Samson*, 30 N.Y.3d at 711 (quoting *Sommer*, 79 N.Y.2d at 552); *see also id.* at 713 (acknowledging that "even if any 'abrupt' or 'catastrophic' consequences either could have or did result from [the defendant's] alleged negligence, the fact remains that the only damages alleged appear to have been within the contemplation of the parties under the contract—and, indeed, as set for above, are identical for both claims"); *City of N.Y. v. Eastern*

---

[4] Plaintiff also does not list out separate damage amounts for each claim, instead, at the end of its claims against GHD it states that it "demands judgment . . . in an amount in excess of $2,000,000, together with costs of suit, and such other and further relief as this Honorable Court deems just and proper under the circumstances." (Dkt. No. 122, at 13). It appears that Plaintiff seeks this amount based on *any* of its claims against GHD, further suggesting that the damages are identical under each theory of liability. *See Millet*, 60 Misc.3d at 593 (in assessing whether the plaintiffs' tort claims were duplicative of plaintiffs' contract claim, finding it "notabl[e]" that "the plaintiffs seek the identical sum under their breach of contract claim" as under their negligence claim).

[5] Plaintiff asserts that "the relief sought by the tort claims is not identical to the relief sought by the contract claims," (*see* Dkt. No. 137, at 9), but it never identifies a category of damages that would be covered under a tort theory of liability that the Plaintiff cannot recover under the contract. Additionally, Plaintiff argues that the tort and contract claims are not duplicative because the contract's indemnification provision provides for "relief well beyond which may be recovered in a simple tort action." (Dkt. No. 137, at 12). But the relevant issue is not whether the contract claim could seek relief beyond that which could be recovered in tort, but rather, whether what is sought in tort can be recovered under the contract.

*Shipbuilding Grp., Inc.*, 162 A.D.3d 469, 470 (1st Dep't 2018) (dismissing on summary judgment a claim for professional malpractice as duplicative because "[a]lthough the service that defendant performed was 'affected with a significant public interest' and the failure to perform could have had 'catastrophic consequences,' the City is 'essentially seeking enforcement of the bargain'" (quoting *Samson*, 30 N.Y.3d at 711)). Accordingly, because Plaintiff's tort claim is duplicative of its contract claim, GHD cannot seek contribution from Kruger and GHD's contribution claim must be dismissed. *See Rockefeller Univ. v. Tishman Const. Corp. of N.Y.*, 240 A.D.2d 341, 343 (App Div. 1st Dep't 1997) (finding that party's contribution claim "should have been dismissed" "in the absence of tort liability" where the plaintiff's underlying claim sought "the identical contractual benefit of the bargain").

### 2.    Dismissal of Cross-Claims

Kruger also seeks to dismiss Jacobs' cross-claim against Kruger for contribution, as well as J.L. Richards' cross-claim against Kruger for contribution or indemnification. (*See* Dkt. Nos. 133, 133-1).

### a.    Timeliness

Kruger first argues that Jacobs and J.L. Richards' assertion of their cross-claims on February 28, 2024, and February 29, 2024, respectively, contravenes the Court's August 25, 2023 Order setting September 28, 2023 as the deadline by which new parties or claims must be added, and thus that after this date, Jacobs and J.L. Richards were required to ask for leave of court or for Kruger's consent pursuant to Rule 15 of the Federal Rules of Civil Procedure. (Dkt. No. 133-1, at 11 n.2). Jacobs responds that "[o]nce Kruger was named as a party, Jacobs properly asserted its equitable contribution claim based on the facts asserted in the [TPC]" and that "[l]eave of court is not required because Jacobs did not amended [sic] its Answer." (Dkt. No. 143, at 6). J.L. Richards did not address Kruger's argument, other than to state that "J.L.

Richards asserted cross-claims against the Third-Party Defendants as is allowed under" Rule 13 of the Federal Rules of Civil Procedure. (Dkt. No. 145, ¶ 2).

The Court's August 25, 2023 Order stated that "the deadline for Defendants to seek to join a party or amend pleadings is extended to 9/28/2023." (Dkt. No. 69). Here, neither Jacobs nor J.L. Richards joined a party or amended pleadings after the deadline. Rather, subsequent to the filing of Plaintiff's SAC and GHD's TPC, Jacobs and J.L. Richards filed *new* answers, (Dkt. Nos. 125, 127), in which they asserted cross-claims against Kruger (and PC Construction) who GHD had joined as third-party defendants in accordance with Rule 13(g) of the Federal Rules of Civil Procedure in its original third-party complaint, filed on September 28, 2023, (*see* Dkt. No. 70). Accordingly, the Court will not dismiss Jacobs and J.L. Richards' cross-claims on the basis that they were untimely.

### b.    Adequacy of Pleading

Kruger states that "[t]he Cross Claimants support for their claims consist entirely of one- or two-paragraph boilerplate legal conclusions which are devoid of any factual allegations" and that the "legal principles" it raises in its arguments supporting dismissal of the TPC "apply generally to Cross-Claimants' Cross-Claims." (Dkt. No. 133-1, at 11). In response, Jacobs makes various arguments, including that the cross-claim "is properly pled" and that "Plaintiff alleged both breach of contract and tort claims." (Dkt. No. 143, at 2).[6] J.L. Richards does not directly respond to Kruger's arguments. (*See generally* Dkt. No. 145).

"[P]leading standards may be 'lessened somewhat for third-party claims, which may be read in conjunction with the original pleadings.'" *Sands Harbor Marina Corp.*, 156 F. Supp. 3d

---

[6] Jacobs also states that "[a]s a threshold matter, Jacobs contends Kruger's motion should be denied as to Jacobs for failure to make a *prima facie* showing that they are entitled to relief against Jacobs," (Dkt. No. 132, at 2), but does not cite any case law suggesting that Kruger's argument, while briefly stated, is insufficient.

at 361 (citation omitted). At the same time, "third-parties seeking indemnification or contribution must still set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

The Court agrees that the same issues as apply to GHD's claim for contribution against Kruger apply to Jacob's claim for contribution against Kruger. Plaintiff's tort claim against Jacobs is duplicative of its contract claims for the same reasons as previously discussed: the alleged contract provisions Plaintiff relies upon for its contract claims explicitly encompass negligence. (*See* Dkt. No. 122, ¶¶ 78–79, 89). Because Plaintiff is essentially seeking enforcement of its bargain under the contract, here too, Jacobs cannot maintain a claim for contribution against Kruger. Accordingly, Jacobs' cross-claim against Kruger is dismissed.

The Court is not convinced, however, that it is currently appropriate to dismiss J.L. Richards' cross-claim for contribution on this same reasoning. While Plaintiff had direct contracts with GHD and Jacobs, Plaintiff only alleges that the City "was an intended third-party beneficiary" of the Subconsultant Agreement between GHD and J.L. Richards. (Dkt. No. 122, ¶ 115). Without further analysis of the specific contract provisions and claims at issue, the Court cannot determine whether Plaintiff's tort and contract claims against J.L. Richards are duplicative. And while J.L. Richards' cross-claim is indeed sparse, read in conjunction with the TPC, it can be plausibly inferred that Kruger breached a duty to the City, the Village, and the Board, (*see* Dkt. No. 124, ¶¶ 30–32), leading to the various damages that occurred as described in the SAC, (*see* Dkt. No. 122, ¶ 45; Dkt. No. 124, ¶ 34). Thus, at this preliminary stage the Court cannot rule, as a matter of law that J.L. Richards could not recover from Kruger in proportion to its share of liability.

As for indemnification, the Court agrees with Kruger that J.L. Richards' cross-claim is insufficient. The cross-claim "does not contain a single independent fact indicating why [Krueger] is obligated to indemnify [J.L. Richards] in the event [J.L. Richards] is ultimately found liable to Plaintiff." *Sands Harbor Marina Corp.*, 156 F. Supp. 3d at 361. And facts necessary to support a theory of indemnification (such as a contractual provision or duty running from Krueger to J.L. Richards) are not found in either the SAC or TPC. Such "boilerplate language" as is used here is plainly insufficient. *See id.*; *see also Cubilete v. United States*, 469 F. Supp. 3d 13, 20 (E.D.N.Y. 2020). Accordingly, the Court will dismiss J.L. Richards' cross-claim for indemnification, but not for contribution.

### B.     PC Construction's Motion to Dismiss

#### 1.     Matters Outside the Pleadings

In support of its motion to dismiss, PC Construction refers to "relevant facts contained in documents referenced in the [TPC], in documents which GHD relied upon in framing the [TPC], and the litigation docket for this matter." (Dkt. No. 134-1, at 7). Specifically, PC Construction argues (or implies) that the Court may consider "[t]he design-build contract between PC Construction and the City," (Dkt. No. 134-1, at 8 n.1), the manufacturer's instructions for the Garlock Link-Seals, (*id.* at 10 n.2), the deposition testimony of Edward Portmann, (*see id.* at 11 n.3), and an exhibit to that deposition consisting of a "photograph of the installation of the sight glass within the concrete wall" of a CN unit, (*id.* at 11, 11 n.3).

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself," *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006), and "documents attached to the complaint as exhibits," *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). However, considering "materials outside the complaint is not entirely foreclosed on a

12(b)(6) motion." *Faulkner*, 463 F.3d at 134 (citations omitted). "A complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers*, 282 F.3d at 152). "A document is incorporated by reference if the complaint makes, 'a clear, definite and substantial reference to the document[].'" *Stinnett v. Delta Air Lines, Inc.*, 278 F. Supp. 3d 599, 608 (E.D.N.Y. 2017) (quoting *McLennon v. City of N.Y.*, 171 F. Supp. 3d 69, 88 (E.D.N.Y. 2016)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *Nicosia*, 834 F.3d at 230 (quoting *DiFolco*, 622 F.3d at 111). "[E]ven if a document is 'integral,' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner*, 463 F.3d at 134. "[I]f material is not integral to or otherwise incorporated in the complaint, it may not be considered unless the motion to dismiss is converted to a motion for summary judgment and all parties are 'given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Nicosia*, 834 F.3d at 231 (quoting Fed. R. Civ. P. 12(d)).

### a.    Design-Build Contract

PC Construction argues that the Court may consider the design-build contract because it "is referenced in the [TPC] as the basis for the contractual indemnity claim." (Dkt. No. 134-1, 8 n.1 (citing Dkt. No. 124, ¶ 40)).[7] The Court agrees with PC Construction that the TPC relies

---

[7] PC Construction has attached the contract as Exhibit A to the attorney Margaret Holden's declaration (the "Holden Declaration"), submitted in support of its motion to dismiss. (*See* Dkt. No. 134-3.)

heavily on the contract and thus, as it is integral to the complaint and as there is no dispute

concerning its authenticity or relevance, it may be considered on a motion to dismiss.

### b.     Manufacturer's Instructions

PC Construction also argues that the Court may consider the manufacturer's instructions

for the Garlock Link-Seals because they "are referenced in the [TPC]." (*Id.* at 10 n.2 (citing Dkt.

No. 124, ¶ 45)).[8] The Court finds that the TPC's assertion that PC Construction acted negligently

by "fail[ing] to install the Garlock Link-Seals in accordance with the manufacturer's

instructions" is a sufficiently clear, definite, and substantial reference to the document. (Dkt. No.

124, ¶ 45). As here too, no party has directly objected to considering the manufacturer's

instructions, nor disputed their authenticity or relevance, the Court finds the document

incorporated by reference into the TPC.

### c.     Portmann Deposition

PC Construction appears to assert that the Court can consider the deposition of Edward

Portmann, "an engineer employed by J.L. who was involved with the decision to use Link-Seals

for the [p]roject," (Dkt. No. 134-1, at 9), and which is nowhere mentioned in the SAC or TPC,

on the basis that the deposition "served as the basis for the allegations in the [TPC]", (*see id.* at

11 n.3). PC Construction does not cite to any case that stands for the proposition that such a

deposition may be deemed integral to the Complaint in these circumstances. Moreover, a similar

attempt to deem deposition testimony integral to a complaint was rejected in *Polanco v. NCO*

*Portfolio Mgmt, Inc*. In that case, the Court explained that "[t]he fact that Plaintiff may have

relied on information uncovered during a deposition to support a proposed amendment does not

mean that all information to which the deponent testified must be deemed part of the proposed

---

[8] PC Construction has attached the instructions as Exhibit B to the Holden Declaration, submitted in support of its motion to dismiss. (*See* Dkt. No. 134-4).

pleading." *Polanco v. NCO Portfolio Mgmt, Inc.*, 23 F. Supp. 3d 363, 373 (S.D.N.Y. 2014) (Freeman, M.J.). For these same reasons, the Court finds that it would not be appropriate to consider the deposition in evaluating PC Construction's motion to dismiss.

### d.    Photograph

PC Construction contends that the Court may consider the photograph of the installation of the sight glass in deciding its motion to dismiss "because it was referenced in defendant's motion papers [in support of GHD's motion to amend the TPC] . . . and was an exhibit to the deposition that served as the basis for the allegations in the" TPC. (Dkt. No. 134-1, at 11 n.3). This argument is unconvincing. The photograph was not mentioned in the TPC, nor does PC Construction suggest it was relied upon in framing the complaint—only that it was referenced in a deposition that the Court also will not consider at this stage. The Court does not consider the photograph in considering PC Construction's motion.

### 2.    Dismissal of GHD's TPC

PC Construction seeks to dismiss GHD's claims for contractual indemnification, common-law indemnification, and contribution. (Dkt. No. 134, 134-1).

### a.    Plausibility of Negligence Allegations

PC Construction argues that GHD has failed to make plausible allegations regarding PC Construction's negligence and thus cannot state a claim for either indemnification or contribution. (Dkt. No. 134-1, at 14–17, 17–18). GHD responds that PC Construction is asking the Court to make factual determinations, which would be inappropriate at this stage of the litigation and that its allegations on this issue are sufficient. (*See* Dkt. No. 142, at 7–9).

The TPC alleges that PC Construction "failed to install the Garlock Link-Seals in accordance with the manufacturer's instructions, and any such negligence on the part of [PC Construction] was a proximate cause of the flooding event of February 18, 2022 at the

wastewater facility." (Dkt. No. 124, ¶ 45). PC Construction raises two objections to the

plausibility of this allegation. First, PC Construction states that the allegation is based on

Portmann's deposition, in which he "initially speculate[d] that PC [Construction] may not have

installed the Link-Seals in adherence with the manufacturer's instructions" but later "admitted

that he was engaging in pure speculation." (Dkt. No. 134-1, at 15–16). Second, PC Construction

explains that the allegation that the Garlock-Link Seals were not installed correctly relies on

Portmann's testimony that he was "not sure if the sight glasses were supported on all sides," a

possibility which, PC Construction argues, is contradicted by other documents, including the

manufacturer's instructions and the photograph, as well as the SAC. (*Id.* at 16–17; *see also* Dkt.

No. 146, at 5–7).

　　These arguments are unavailing. In part, they rely on evaluating documents, most

significantly a deposition, that the Court has decided would be inappropriate to consider on a

motion to dismiss. *See Polanco*, 23 F. Supp. 3d at 374 ("Essentially, Defendant is asking the

Court to take portions of testimony that may well be disputed, and to use that testimony to attack

the factual validity of Plaintiff's proposed claim. Such an exercise, at this stage of the

proceedings, would be inappropriate." (citations omitted)). Further, to accept PC Construction's

argument would require the Court to make a factual determination that the installation of the

sight-glass using a Garlock Link-Seal where "the sight glass [is] installed entirely within a wall,

surrounded by concrete," (*id.* at 6), is consistent with the requirement in the manufacturer's

instructions that the "pipe will be adequately supported on both ends," (Dkt. No. 134-4, at 2).

Such a decision would not be appropriate for the Court to make at this stage. *See Roth v.

Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("[A] ruling on a motion for dismissal pursuant to

Rule 12(b)(6) is not an occasion for the court to make findings of fact." (citing *Leonard F. v.*

*Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999))). Accordingly, the Court will not dismiss GHD's claims against PC Construction on this basis.

### b.    Common-Law Indemnification

In addition to arguing that "GHD has not adequately pled any wrongdoing on the part of PC [Construction]," PC Construction argues that GHD's claim for common-law indemnification should be dismissed because the TPC "is devoid of any allegation that GHD was free from any wrongdoing, or that GHD delegated exclusive responsibility for its engineering and oversight duties to PC [Construction]." (Dkt. No. 134-1, at 18–19; *see also* Dkt. No. 146, at 9–10). In response, GHD states that in the TPC it "unequivocally denied all liability as alleged by the plaintiff in the primary action," that the TPC "specifically alleges that PC [Construction] improperly, incorrectly, unsafely, and/or inadequately installed the Garlock-Seals at issue," and that PC Construction "does not dispute that it was the party solely responsible for installing [the] Garlock Link-Seals." (Dkt. No. 142, at 9–10).

As in its claim for common-law indemnification against Kruger, GHD has failed to plead sufficient facts indicating the delegation of a duty from GHD to PC Construction. While GHD alleges that PC Construction "was responsible for installing the Garlock Link-Seals into the walls of the existing CN units that were being rehabilitated," (*see* Dkt. No. 124, ¶ 41), and indicates the existence of a contract whereby PC Construction agreed to indemnify GHD for certain "work," (*id.* ¶ 47), the TPC never specifically alleges that GHD is the entity that contracted with PC Construction to install the Garlock Link-Seals or that GHD exclusively delegated this responsibility to PC Construction. Accordingly, the Court will dismiss GHD's claim for common-law indemnification against PC Construction.

c.    ***Spearin*** **Doctrine**

PC Construction argues that the *Spearin* Doctrine—a rule that "if a contractor is bound by contract to build according to the plans and specifications prepared by the owner, the contractor is not responsible for the consequences of defects in the plans and specifications"— precludes finding PC Construction liable "absent plausible allegations that could establish the incident was caused by a construction defect rather than by the design and the improper application of the Link-Seals." (Dkt. No. 134-1, at 19–20). GHD responds that PC Construction's arguments are "premature" and that GHD "has plausibly alleged that the incident at issue . . . was caused by a construction defect" and therefore that the *Spearin* doctrine is inapplicable. (Dkt. No. 142, at 11–12).

"[T]he Supreme Court in [*United States v.*] *Spearin* recognized that an implied warranty arises in a particular circumstance: when a contractual requirement binds the builder to follow design specifications stated in the contract, an implied warranty arises that the resulting work will not be defective or unsafe." *Lakeshore Eng'g Servs., Inc. v. U.S.*, 748 F.3d 1341, 1349 (Fed. Cir. 2014) (citing *Essex Electro Eng'rs, Inc. v. Danzig*, 224 F.3d 1283, 1289 (Fed. Cir. 2000)). As discussed above, GHD alleges that PC Construction "was independently negligent because it improperly, inadequately, and unsafely installed the Garlock Link-Seals, and that PC [Construction] failed to comply with the manufacturer instructions for the Garlock Link-Seals." (Dkt. No. 142, at 11; *see also* Dkt. No. 124, ¶¶ 44–45). These allegations do not suggest the type of situation covered under the *Spearin* doctrine and thus the Court will not dismiss the GHD's remaining claims against PC Construction on this basis.[9]

---

[9] PC Construction in reply argues that the allegation that "PC failed to comply with the GHD's plans and specifications" is "speculative and illogical." (Dkt. No. 146, at 10–11). This argument is rejected, for the same reasons as discussed above in Part IV.B.2.a.

### 3.    Dismissal of Cross-Claims

PC Construction states that "[i]f this Court dismiss [sic] the [TPC], Jacobs' and J.L. Richards' cross-claims must also be dismissed." (Dkt. No. 134-1, at 20). However, because the Court has declined to dismiss all of the claims in the TPC as alleged against PC Construction, the Court need not evaluate that argument further.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Kruger's motion to dismiss, (Dkt. No. 133), is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that GHD's claims for contractual indemnification, common-law indemnification, and contribution against Kruger are **DISMISSED**; and it is further

**ORDERED** that Jacobs' cross-claim for contribution against Kruger is **DISMISSED**; and it is further

**ORDERED** that J.L. Richards' cross-claim for indemnification against Kruger is **DISMISSED**; and it is further

**ORDERED** that PC Construction's motion to dismiss, (Dkt. No. 134), is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED** that GHD's claim for common-law indemnification against PC Construction is **DISMISSED**.

**IT IS SO ORDERED.**

Dated:  January 24, 2025
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge